UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SHIRL A. ROBERSON,          )
                                 )
        Plaintiff,         )
                                 )
        v.               )     No. 4.05CV462 CDP
                                 )
JO ANNE B. BARNHART,     )
Commissioner of Social Security,   )
                                 )
        Defendant.       )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the

Commissioner's final decision denying Plaintiff Shirl A. Roberson's application for

disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. and

supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§

1381 et seq. Roberson claims that she is disabled due to bipolar disorder,

headaches and pain around her neck, right shoulder torso, left hip and left leg. The

Administrative Law Judge, however, found that Roberson was not disabled.

Because I find that the decision denying benefits was supported by substantial

evidence, I will affirm the decision.

## Procedural History

On July 31, 2002 and August 15, 2002, Roberson filed applications for a Period of Disability, Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act. Roberson alleged disability since July 29, 2002 due to bipolar disorder, headaches and pain in her neck, right shoulder, torso, left hip and left leg. The application was denied initially[1] on October 28, 2002. Roberson requested a hearing which was held on January 20, 2004. The ALJ determined that Roberson was not disabled. On January 28, 2005, the Appeals Council denied Roberson's request for review. Thus, the decision of the ALJ stands as the final determination of the Commissioner.

## Evidence Before the Administrative Law Judge

Roberson was 53 years old at the time of the hearing. She has two one-year diplomas in computer operations and computer programming, a bachelor's degree in systems and data processing, and a master's degree in business administration. Roberson began her working career as a secretary in a loan office. She later worked

---

[1] Missouri is one of several test states participating in modifications of the disability determination procedures applicable to this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. See id. Therefore, plaintiff's appeal in this case proceeded directly from her initial denial to the ALJ level.

as a computer operator, and after college, she worked for several different companies as a computer analyst/consultant/programmer, changing employers frequently.

Roberson testified that she has not worked since July 29, 2002 due to bipolar disorder, headaches and pain about her neck, right shoulder, torso, left hip and left leg. She testified that she has been unable to work because of extreme anxiety and feeling stressed out, and because she could not focus or concentrate. She said she had trouble remembering simple instructions, tasks and daily events because of racing thoughts and frequent worrying, even with the assistance of medication. However, Roberson acknowledged that medication does provide somewhat of a calming effect for such problems, but does not eliminate them. She has problems sleeping, which results in her feeling tired and fatigued throughout the day. Roberson stated that her mood changes frequently from being depressive to being manic, but that she is manic more than depressive. She testified that she has headaches several times a week, for which she takes over-the-counter medication. She mentioned having some pain in her left leg, in her hip on the left side and her right neck and right shoulder and in her upper back on the right side.

Roberson testified that the combination of these problems led to her being fired from many different jobs over the past several years. Her husband filled out a

"Daily Activities Questionnaire" and reported that over the past several years it has been more difficult for her to handle her job and that she has been fired on numerous occasions, which he believes is caused by her "diminishing mental state." Nevertheless, she left her last job on her own accord after ten months; she was not fired. Her supervisor at that job, however, reported that the quality and quantity of her work was "far below what is expected of a Senior Programmer Analyst." The supervisor also mentioned that several co-workers expressed difficulties in working with Roberson because she did not listen to instructions carefully, but that Roberson "got along well with supervisors" and said that they "had no issues as far as this is concerned."

Roberson testified that she has difficulty completing tasks in the home because she often forgot what she had completed and what she had not. Nonetheless, she takes care of the cleaning, doing the dishes, doing laundry, cooking, shopping, sweeping and vacuuming. She is also able to care for her daughter, drive her to school daily, and prepare meals for the two of them.

## Medical Records

Roberson has seen a psychiatrist, Dr Howard Ilivicky, for several years. On July 29, 2002, he wrote in his Progress Notes that Roberson felt she needed to go on disability, and he wrote his opinion that she should be out of work for four

weeks.  On August 6, 2002, Dr. Ilivicky, in completing a "Certification of Health Care Provider," left blank the question (along with most of the other questions on the form) that asked whether it would be necessary for Roberson to work intermittently or less than a full schedule because of her bipolar disorder.  Dr. Ilivicky stated on this form that it was "unknown" whether additional treatments would be required.  On the question that asked if medical leave was required from Roberson's bipolar disorder, if the employee was unable to perform work of any kind, Dr. Ilivicky simply answered this question "yes."

On December 10, 2002, Dr. Duane Turpin examined Roberson and concluded that she was "alert and oriented" and that her "[l]ogic, reasoning, and insight were within normal limits."  Dr. Turpin also noted that the plaintiff had "normal thought content" and "a normal fund of knowledge."  Further, Dr. Turpin concluded that an MRI of the brain was normal and that the EMG-NCS of Roberson's left hip and leg lower leg was normal.

Dr. Timothy Leonberger performed a psychological examination on Roberson on February 9, 2004.  He notes that Roberson acknowledged that she could do most activities of daily living including cooking, laundry, housecleaning and grocery shopping.  In addition, Roberson told Dr. Leonberger that she was able to drive and handle her own money without difficulty.

Dr. Leonberger made several observations of Roberson during her evaluation. Dr. Leonberger mentioned that Roberson "was awake, alert, and oriented to person, place, time, and situation"; that her "[s]peech was somewhat rapid in rate, but otherwise within normal limits"; her "thinking was mildly tangential but usually logical and sequential"; her "mood seemed to be mildly elevated and her affect was quite cheerful, despite the content of her speech"; and her "attention/concentration appeared to be fair." He noted that Roberson had never been psychiatrically hospitalized and had been able to function at several different jobs over a long period of time. He concluded that she was not impaired in activities of daily living; she had moderate impairment within the area of social functioning; she had mild to moderate impairment within the area of concentration, persistence, and pace; and she had mild to moderate impairment within the area of deterioration or decompensation in work or work-like settings.

On the "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," Dr. Leonberger concluded that Ms. Roberson's Cyclothymic Disorder "occasionally disrupts" her concentration and ability to persist on tasks. Dr. Leonberger found no difficulty for Roberson to understand and remember short, simple instructions; moderate limitations in the ability to understand, remember or carry out detailed instructions; and slight limitations in the ability to make judgments

6

on simple work-related decisions. Within the area of interaction with others, Dr. Leonberger noted that Roberson's bipolar disorder makes her "sometimes restless, fidgety, and speak rapidly," which can cause difficulty in social interaction. However, Dr. Leonberger found that Roberson was only moderately limited in her ability to interact appropriately with the public, supervisors and co-workers. Dr. Leonberger also found moderate limitations in Roberson's ability to respond appropriately to work pressures and changes in a usual/routine work setting.

On January 23, 2004, Roberson visited Dr. John Powell for an evaluation of her right shoulder. Roberson complained of pain but there was no significant weakness in testing the rotator cuff function. An MRI of the right shoulder showed "some fraying" of the supraspinatus tendon[2] but "no definite tear." However, Dr. Powell discharged her as a patient as of March 25, 2004, after her prescription was up.

Upon appeal to the Social Security Administration Appeals Council, the

---

[2]The supraspinatus tendon is the upper tendon in the rotator cuff. *See* http://www.webmd.com/hw/health_guide_atoz/d71359645.asp. "The supraspinatus tendon connects the supraspinatus muscle and the bone of the shoulder, and aids the supraspinatus to move the humerus, the bone between the shoulder and the elbow." *See* http://www.healthscout.com/ency/68/333/main.html. "This muscle is used to lift the arm up sideways and is also important in throwing sports as it is the muscle that holds the arm in the shoulder when you release what you are throwing." *See* http://www.sportsinjuryclinic.net/cybertherapist/font/shoulder/supraspininflam.htm.

following new evidence was added. On May 6, 2004, Dr. Ilivicky completed a form for Metropolitan Life Insurance Company, in which he checked "yes" to the question whether Roberson is totally disabled from her occupation as a Senior Programmer Analyst. He wrote "all" in the blank for the job functions that Roberson was unable to perform due to her bipolar disorder, but failed to answer the majority of other questions on the form, such as what his return for work goals were for Roberson and what behavior/attitudes or functional impairments were prohibiting Roberson from returning to work. Dr. Ilivicky submitted a letter addressed "To Whom It May Concern" on November 8, 2004, stating that she is unable to work due to her bipolar and extreme anxiety. On January 6, 2005, Dr. Ilivicky wrote a letter "To Whom It May Concern" that since the time he started seeing Roberson in Fall 2000 that she had "demonstrated extreme mood swings, uncontrollable anxiety, inability to interact with people or handle stressful situations." Dr. Ilivicky noted that Roberson's bipolar "probably contributed to...her...inability to work." He concluded the letter by stating that Roberson mainly "presents [herself] as nonfunctional or completely disabled."

Roberson also produced records of a post-denial assessment conducted by the Crider Center for Mental Health on November 18, 2004. The Crider Center concluded that based on her diagnosis of bipolar disorder, Roberson qualified for

their community support program.  Roberson reported to the evaluator that she felt "[t]errible[,] sad, kinda depressed," but she later reported that "she never ever feels depressed."  She stated that "her current physical health is 'fine except for problems at times [with her] shoulder, ankles, upper back and neck.'"  The Crider Center evaluation concluded that Roberson "appears oriented and intellectually able to function" and noted that "[s]he denies perceptual disturbances, but acknowledges many issues stemming from her mental illness."  They found that she suffered only "moderate" problems related to her social environment and "mild" problems concerning occupation.

Dr. Vaughn examined Roberson on September 7, 2004.  He reported that her right shoulder pain was alleviated by an injection.  He noted that Roberson complained of toe pains and that she could not stand things touching her toes for six to eight weeks.  Dr. Vaughn's medical reports of Roberson on September 13 and 17, 2004 mentioned cramping, muscle spasms, and back aches.   Dr. Vaughn noted on November 23, 2004 that Roberson's right shoulder pain was not as bad, but that she still wanted to see a rheumatologist for all her aches and pains including shoulder, back, and feet.  Dr. Vaughn further mentioned that Roberson was "doing well" on medication with her palpitations and migraine headaches.

Dr. Turpin's records from May 25, 2004 and December 7, 2004 are hard to

read, but they do mention headaches. Dr. Edward Stein's notes from June 10, 2004 show that Roberson complained of pain around the third or fourth metatarsals of her right foot. However, on Roberson's January 4, 2005 visit to Dr. Stein, it was noted that the neuroma in the third interspace of the right foot was markedly improved and did not need any type of care.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, she is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform her past relevant work. If the claimant can perform her past relevant work, she is not disabled.

If the claimant cannot perform her past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is

never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166,

1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective

complaints when they are inconsistent with the record as a whole.  See e.g., Battles

v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective

complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler,

739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and
> treating and examining physicians relating to such matters as: (1) the
> objective medical evidence; (2) the subjective evidence of the duration,
> frequency, and intensity of plaintiff's pain; (3) any precipitating or
> aggravating factors; (4) the claimant's daily activities; (5) the dosage,
> effectiveness and side effects of any medication; and (6) the claimant's
> functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is

entitled to substantial weight.  Singh, 222 F.3d at 451.  A treating physician's

opinion concerning a claimant's impairment will be granted controlling weight, if the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in the record.

Id.  While a treating physician's opinion is usually entitled to great weight, the

Eighth Circuit has cautioned that an opinion "do[es] not automatically control, since

the record must be evaluated as a whole." <u>Prosch v. Apfel</u>, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "'are supported by better or more thorough medical evidence'" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. <u>Id.</u> (quoting <u>Rogers v. Chater</u>, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. <u>Singh</u>, 222 F.3d at 452; <u>Prosch</u>, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## The ALJ's Findings

The ALJ found that Roberson was not disabled, considering her age, education, work experience and residual functional capacity. He concluded that she could perform work at all exertional levels and that she could perform her past relevant work as a computer programmer.

The ALJ found that Roberson's allegations were not credible and conflicted with the medical evidence. Additionally, the ALJ found that Roberson had the ability to understand, remember and carry out detailed or complex instructions, respond appropriately to supervisors, co-workers and usual work situations, and

deal with changes in a routine work setting. The ALJ concluded that the fact that

Roberson was a computer programmer allowed her to do her job without being

involved with the one task she was unable to perform, handling the complaints from

public customers.

### Discussion

On appeal, Roberson alleges that the Appeals Council did not properly

consider additional evidence provided after the ALJ's decision was rendered.

Roberson also argues that the Commissioner's denial of benefits is erroneous

because the ALJ failed to find that she satisfied the Commissioner's Listing

requirements under § 12.04A(3). She also contends that the Commissioner did not

assign the appropriate weight to the findings of her primary physician. Roberson

then turns to a claim that the Commissioner erred in his residual functional capacity

decision. Lastly, Roberson argues that the Commissioner wrongly decided that her

allegations were not credible.

Roberson argues that the Commissioner should have found that she satisfied a

listed impairment. Roberson claims she suffers from bipolar disorder and that she

meets the Listing 12.04A(3), 20 C.F.R. pt. 404, subpt. P, app. 1.[3] Roberson claims

---

[3] This listing provides:

that the ALJ failed to compare the requirements of Listing 12.04A(3) to the record's evidence. However, as both Roberson and the Commissioner have pointed out in their briefs, the Eighth Circuit holds that the failure to provide in the opinion the explanation of each listing requirement does not render the opinion erroneous if the deficiency did not have a "practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999). See Pepper o/b/o Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003) (Although preferable to have ALJs state their reasons for why the claimant failed to meet the listing requirements, failure to address a specific listing "is not reversible error if the record supports the overall conclusion."); Donahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001).

The parties agree that Roberson suffers from bipolar disorder, but to meet the listing she must also have a history of manic and depressive syndromes and two of the four limitations listed under § 12.04B. The ALJ supports his finding that these

---

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

limitations are not met by relying on an analysis prepared by Dr. R. Rocco Cottone on October 23, 2002. Dr. Cottone reviewed the file and concluded that none of the four limitations satisfied the functional criterion to the appropriate degree. First, Dr. Cottone found that the restriction of daily living activities was only mild. Second, he found Roberson had only a moderate limitation in maintaining social functioning. Third, Dr. Cottone determined that Roberson suffered only a moderate limitation in maintaining concentration, persistence or pace. Lastly, he concluded that Roberson suffered only one or two episodes of decompensation with extended duration.

These conclusions are entirely consistent with Dr. Leonberger's later evaluation of Roberson, and are supported by the medical evidence. As to daily activities, the record shows Roberson drives, cleans, shops, prepared meals, cares for her child and has no problem handling money. With regard to social functioning, there was evidence both that Roberson had trouble getting along with co-workers but also that she got along well with supervisors. She does have some history of physical altercations (apparently mostly involving family members), but she occasionally attends church and was able to travel to Wisconsin to visit family. The conclusion that she has a moderate impairment in social functioning is supported by the evidence. Likewise, the evidence supported the conclusion that she had only a moderate impairment in concentration, persistence and pace.

When considering the last factor of §12.04B concerning repeated episodes of decompensation with extended duration, substantial evidence supports the ALJ's decision that this factor was not met. Dr. Cottone concluded that Roberson did not meet the degree of limitation requirement for this factor because she experienced only one or two episodes of decompensation. Dr. Leonberger found that she suffered only mild to moderate impairment in this area. Although Roberson cites evidence that she has lost jobs on several occasions, the evidence also shows that she had been able to function at various jobs for a number of years. Further, Dr. Leonberger noted that she had maintained employment with several companies for a period longer than two years. Additionally, the mere fact that she has been fired from jobs does not necessarily mean that she has had repeated episodes of decompensation. She has never been hospitalized for psychiatric symptoms, and the medical records repeatedly indicate that she presents in no acute distress. Her earnings range from approximately $16,000 to $24,000 in the eighties, and from $26,000 to as high as $71,000 in the 90s. The last three years available, 2000, 2001, and 2002, show earnings exceeding $36,000, $46,000, and $52,000, respectively. These figures contradict a claim that she has had lengthy periods of decompensation. Most important, of course, is the lack of any medical record showing serious decompensation. Therefore, I find that substantial evidence

supports the ALJ's decision that Roberson did not have repeated episodes of decompensation with extended duration to meet the last factor under § 12.04B.

Thus, since the substantial evidence of the record supports the finding that Roberson does not meet the requirements of § 12.04B, the ALJ's decision that Roberson did not satisfy a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 will stand.

Roberson next makes the argument that the ALJ failed to assign appropriate weight to the findings of her primary treating physician. Usually, the medical records of a claimant's primary treating physician will be given greater weight than the opinion of the consulting physician. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995). However, this is not conclusive in determining whether the claimant is disabled. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986). The primary treating physician's opinion may even be discounted if not supported by medically acceptable clinical data. Id. Statements made by the primary treating physician regarding whether the claimant is disabled can be discounted in favor of an alternative medical finding by a consulting physician if such statements were conclusory. Id. (citing Brand, 623 F.2d at 527-28).

The ALJ considered Dr. Ilivicky's evidence, but found that the "medical evidence [did] not support [Roberson]." The ALJ considered several factors in his

determination. First, he noted that Dr. Ilivicky only excused her from work for a period of four weeks. The ALJ then looked to evidence that Dr. Ilivicky failed to complete a form for disability status in October 2002 after the Social Security Administration requested such a report from him. Dr. Ilivicky sent the form back uncompleted with just his office notes attached. Roberson tries to argue that the notation in Dr. Ilivicky's notes on August 7, 2002 supported her claim that Dr. Ilivicky found her to be disabled as of this time. However, there is nothing in Dr. Ilivicky's August 7, 2002 notation that states he would be willing to extend the length of the disability time for more than four weeks, especially considering the fact that this notation fell within the four week period. Also, the notation only states to have the agency request a letter from Dr. Ilivicky, but that it would not provide the letter to whom it may concern.

Further, the ALJ concluded from Dr. Ilivicky's mental evaluations of Roberson from July 2002 to late 2003 that there was evidence of decreased memory only once, forgetfulness once, racing thoughts once, and an increased rate of speech twice. The ALJ also mentioned that the evaluations did show that Roberson had a labile affect, but noted that the Doctor generally described this condition as mild or slight. Thus, Dr. Ilivicky's opinion did not conflict with those of the other treating physicians because he provided no opinion that Roberson was disabled for a period

of twelve months or more prior to the ALJ's decision. Nonetheless, even assuming Dr. Ilivicky found Roberson to be disabled, this conclusion is conclusory and contrary to the opinion of Dr. Leonberger and Dr. Turpin.

As mentioned above, Dr. Leonberger did not find Roberson to have any marked limitations. Further, Dr. Turpin found that Roberson was alert, oriented, and had normal logic, reason and insight. The ALJ evaluated the results of all of Roberson's physicians before coming to a determination that Roberson was not disabled, including Dr. Ilivicky's findings. I conclude that the ALJ adequately considered Dr. Ilivicky's evaluations and based on that evidence found that it did not support a claim for disability for a period of twelve months or more.

Next, Roberson argues that the ALJ did not fully consider the evidence of the record when assessing her residual functional capacity. Residual functional capacity "is the most [a person] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545, 416.945. This determination turns on "all of the relevant medical and other evidence," including statements from the claimant. Id. This evidence includes: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; (5)

treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; (6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Polaski, 739 F.2d at 1321-22; 20 C.F.R. §§ 404.1529, 416.929.

The ALJ adequately considered the entire record in his determination that Roberson had the residual functional capacity to perform her past relevant work as a computer programmer. There was evidence from Dr. Leonberger that Roberson had a satisfactory ability to interact with co-workers and supervisors. The evidence supports the view that Roberson had no restrictions on her activities of daily living, only mildly to moderately impaired concentration, persistence and pace, and only moderately impaired social functioning. I cannot say that the ALJ did not consider the entire record in making his determination. Therefore, substantial evidence supports the ALJ's finding that Roberson has the residual functional capacity to have performed her past relevant work as a computer programmer since July 29, 2002.

Roberson next argues that the ALJ improperly evaluated her testimony in his credibility determination. The ALJ properly evaluated Roberson's testimony under the standards set forth in Polaski, 739 F.2d 1320. First, none of Roberson's

physicians testified or otherwise concluded that she was disabled at any time prior to the ALJ decision for a period of longer than four weeks. Just as treating physician's opinion must, in general, be given "substantial" weight in determining a claimant's disability status, Burress v. Apfel, 141 F.3d 875, 880 (8th Cir. 1998), the absence of a document concluding Roberson is disabled in the record, as here, tends to weigh against a finding favorable to the claimant.

Although the ALJ may discount a claimant's subjective complaints, he may not do so on the sole ground that those complaints are not fully supported by the objective medical evidence. Jeffrey v. Secretary of Health & Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Bladck v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Spradling v. Chater, 126 F.3d 1072, 1075 (8th Cir. 1997); Battles, 902 F.2d at 660. Thus, in assessing subjective allegations, the ALJ may consider the frequency and type of the claimant's medication or treatment, the claimant's daily activities, and the claimant's appearance and demeanor at the hearing. Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989).

When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination using the factors set forth in Polaski. Baker v.

Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998); Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered the relevant evidence. Jeffrey, 849 F.2d at 1132; Butler v. Secretary of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

The ALJ provided several reasons in which Roberson's testimony could be discredited and provided supporting reasons for doing so. The major reason the ALJ discredited Roberson's testimony was that her stated symptoms supporting her disability claim conflicted with her activities and the medical evidence. For example, the ALJ noted that Roberson "drives, grocery shops, prepares meals, cleans house, washes dishes, launders cares for her daughter, attends church services, and handles money." Roberson also stated that she can cook, launder, shop, drive, and handles money without difficulty.

Roberson has complained of pain, fatigue, nervousness and other problems and has a lengthy medical file. The ALJ reasoned that Roberson's claims of the intensity and frequency of her symptoms were "grossly inconsistent" with the medical record. He mentioned that Roberson only experienced the side-effects of tiredness and lack of energy from her medication. The ALJ also cited that Roberson's prior employer reported that she got along with her supervisors and

came to work on time and regularly. The ALJ mentioned that Roberson's prior

employer did further state that her work as a senior computer programmer-analyst

was substandard, but countered this with medical evidence that Roberson was never

found to be disabled for a period of at least twelve months. Also, Roberson's last

employer reported that she had "extreme" difficulty following instructions because

she did not listen well and said she understood when she did not. Nonetheless, the

ALJ concluded that based on the medical evidence, these characteristics could result

from Roberson's "inherent nature, not a mental impairment." When an ALJ has

given serious consideration to the evidence and, for good reason including

inconsistencies in the record, discredits a claimant's testimony of her impairment,

the Courts should not disturb the ALJ's decision. See Browning, 958 F.2d at 821

(upholding ALJ's decision that based on the evidence that claimant worked for

several years despite having the pain she later complained of as disabling, that it

was the plant-closing and not her physical condition that forced her out of work).

The ALJ here explained his reasons for his credibility determinations with evidence

from the record, and I find those determinations are supported by the record.

Roberson's brief also claims that the ALJ erred in ignoring evidence from her

husband that he believed she had been fired several times due to her "diminishing

mental state." However, it is not unreasonable for an ALJ to discredit a family

member's testimony in this instance because he had a financial interest in this case by still being married to her at the time (August 28, 2002), as she did not file for legal separation until sometime after August 2003. This is an appropriate basis for the ALJ to discount her husband's credibility. See Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988) (testimony of woman who lived with claimant was discounted partially because she had financial interest in case). Moreover, regardless of her credibility, the substance of her husband's testimony is irrelevant, as the ALJ reasonably found Roberson's bipolar disorder did not support a finding of disability because the medical evidence established otherwise.

While the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence, the ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles, 902 F.2d at 660; Outsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989). This is what the ALJ did in the present case. Credibility determinations, when adequately explained and supported, are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for discrediting Roberson's claim, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).

Lastly, the Plaintiff alleges that the Appeals Council erroneously failed to

consider new and material evidence submitted after the ALJ's decision was issued. The Appeals Council will only consider new and material evidence when it relates to a period of time on or before the date of the ALJ's decision.  See 404.970 (d).

In order for the additional evidence to be "material," the evidence must relate and be relevant to the claimant's condition on or prior to the ALJ's decision.  See Apfel, 207 F.3d at 1069; Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000); Williams, 905 F.2d at 216.  The date on which the additional evidence took place is not dispositive of whether it is material.  See Williams, 905 F.2d at 216.  Therefore, the additional evidence is not material if it only identifies "after-acquired conditions or post-decision deterioration of a pre-existing condition."  See Apfel, 207 F.3d at 1069-70.

Dr. Ilivicky checked "yes" on a Metropolitan Life form that Roberson was disabled on May 6, 2004; however, he wrote hardly anything else on this form saying why Roberson was disabled or for how long.  Thus, this form is not helpful, and therefore not material, in determining whether Roberson was disabled.

Further, Dr. Ilivicky provided two notes stating that Roberson was disabled. Nonetheless, neither letter relates back to the period prior to or on the date of the ALJ hearing.  The November 8, 2004, letter states that due to her conditions, Roberson was "unable to work at this time."  This letter relates to the present time,

27

it does not relate back to the date of the ALJ decision or a period prior to that.

Second, the January 6, 2005 letter states "[m]ainly she presents as nonfunctional and completely disabled." This also does not refer to a period before the ALJ decision.

Further, Roberson's Crider Center Mental Health evaluation on November 18, 2004 does not necessarily relate back to a period on or before the ALJ's ruling. No evidence found by the Crider Center could qualify her as disabled from working. The evaluation concluded that she "appear[ed] oriented and intellectually able to function." Also, the analysis of Roberson's psychosocial and environmental problems concluded that she suffered only "mild" problems concerning occupation and "moderate" problems related to her social environment.

Dr. Vaughn's medical record of Roberson after the ALJ decision is not material either. In a September 7, 2004, note, Dr. Vaughn reports that Roberson was a "[w]ell developed, well nourished patient in no distress, [with] normal affect, [and who was] alert and oriented." Dr. Vaughn also stated Roberson's shoulder pain subsided with a shot. Again, on November 23, 2004, Dr. Vaughn reported that Roberson's shoulder pain was doing better. Also, on November 23, 2004, Dr. Vaughn noted that Roberson was "doing well" on medication with her palpitations and migraine headaches. This evidence is not supportive of a claim of disability and

if it did relate back to a period on or prior to the ALJ decision, which it does not, this evidence might actually hurt Roberson's claim.

The last of the additional evidence provided by Roberson was notes from Dr. Turpin. Again, this evidence is not material and does not relate back to a period on or before the ALJ decision. Although Dr. Turpin's record mentions headaches, it is hard to read the content surrounding the headaches. Further, any complaints Roberson had with her right foot was corrected when Dr. Stein noted that "the neuroma in the third interspace of the right foot [was] markedly improved" and needed no other treatment.

Since the additional evidence provided by Roberson was not material and did not relate to a period on or before the ALJ decision, the Social Security Administration Appeals Council correctly decided not to consider such evidence.

Considering the factors set forth in Polaski, 739 F.2d at 1330, see supra, I find that the ALJ's determination of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered

this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 21st day of March, 2006.